IONA S. MOORE, Employee v. J. P. STEVENS & COMPANY, INC. Employer
LIBERTY MUTUAL INSURANCE COMPANY, Carrier

No. 7910IC777

(Filed 5 August 1980)

1. **Master and Servant § 68—worker's compensation—occupational disease—proof of causation**

    One element of a claimant's right to compensation for an occupational disease under G.S. 97-53(13) and G.S. 97-52 is proof of causation.

2. **Master and Servant § 68— worker's compensation – occupational disease – necessary findings**

    Where the Industrial Commission awards compensation for disablement due to an occupational disease emcompassed by G.S. 97-53(13), the opinion and award must contain explicit findings as to the characteristics, symptoms and manifestations of the disease from which the plaintiff suffers, as well as a conclusion of law as to whether the disease falls within the statutory provision; however, such findings should not be necessary upon the Commission's finding that the disease, whatever its manifestations and whatever its symptoms, was not due to causes or conditions characteristic of the particular employment in which the employee was engaged.

3. **Master and Servant § 68— worker's compensation – finding that exposure to cotton dust not cause of disease – denial of claim**

    A finding by the Industrial Commission that plaintiff textile worker's chronic obstructive pulmonary disease was not due to her exposure to cotton dust and lint in her employment with defendant employer provided a sufficient basis for the Commission's denial of compensation to plaintiff for an occupational disease.

4. **Master and Servant § 68— worker's compensation – finding that exposure to cotton dust not cause of disease – sufficiency of evidence**

    A finding by the Industrial Commission that plaintiff's chronic pulmonary disease "is not due to her exposure to cotton dust and lint in her employment with defendant employer" was supported by the evidence where plaintiff's expert witness testified that, although plaintiff had been employed in an area of cotton manufacturing in which the incidence of employment-related chronic lung disease is highest, plaintiff did not exhibit the usual history of onset and progression symptoms classical for this problem, and where plaintiff's expert, in explaining his opinion testimony that plaintiff's respiratory disease "could or might have been caused by her occupational exposure," stated that his opinion referred to "possibility" rather than "probability."

5. **Master and Servant § 68— workers' compensation – pulmonary problems – findings as to effect of weather**

    The evidence supported a finding by the Industrial Commission that

Moore v. Stevens & Co.

plaintiff's pulmonary problems were worse in the fall and winter months and that cold weather adversely affected those problems.

APPEAL by plaintiff from Opinion and Award of the North Carolina Industrial Commission filed 5 March 1979. Heard in the Court of Appeals 4 March 1980.

This is a claim for benefits under the Workers' Compensation Act for alleged occupational disease resulting from exposure to cotton dust. The jurisdictional facts were stipulated. The case was heard before Deputy Commissioner Denson on 4 January 1978 in Roanoke Rapids and on 24 May 1978 in Chapel Hill.

At the hearings the parties further stipulated that plaintiff last worked for defendant employer on 14 May 1976 and that for the periods 1925 to 1934 and 1941 to 1945 plaintiff employee had worked in the spinning room at defendant's Roanoke Rapids plant, and for the period 1945 to 1976 in the weave room.

Evidence was presented at the hearing to show the following: Dr. John W. Boone, a specialist in family practice who treated plaintiff for a number of years after December 1965, testified that during that period plaintiff suffered from a variety of medical problems including headaches, nervous tension, gastritis, arthritis, dizziness, upper respiratory tract infection and bronchitis. In 1968 plaintiff suffered from chest discomfort, which Dr. Boone diagnosed as myocardial ischemia and treated with nitroglycerin. Between 1965 and 1977 plaintiff had two episodes of coughing blood, which Dr. Boone attributed to her bronchitis because it cleared with antibiotics. He stated that based on his diagnoses of her condition at the time of the hearing, plaintiff was disabled from work primarily because of her heart difficulties and chest pain.

On cross-examination by plaintiff's attorney, Dr. Boone testified that chest pain, such as that from which plaintiff suffered, is "one symptom of dust disease or lung disease." However, in a letter dated 19 December 1977 to defendant's insurance carrier he stated that he was not aware of her symptoms on exposure to cotton dust and was not familiar with the section of the mill in which she worked.

Moore v. Stevens & Co.

Plaintiff testified that she began working for defendant employer at the age of 13 in the spinning room. During her years in the spinning room, there was always lint dust in the air of the work area. In 1946 plaintiff began working in the weave room which was also filled with lint dust. She had no serious illness prior to starting work in the weave room except bronchitis. The temperature and humidity in the weave room in which she worked varied considerably. In 1950 plaintiff began smoking. When she suffered lung problems, she stayed out from work. Plaintiff stopped working on 14 May 1976 because of weakness and shortness of breath. Dr. Boone, her personal physician, recommended that defendant employer remove her from an area where there was lint and dust. Plaintiff attempted to return to work in November 1976 after her leave of absence, but was told by defendant's plant personnel manager that she could not continue to work because he understood that she had lung problems. After May 1977 plaintiff sought other employment, and by the time of the hearing she had worked on and off part-time as a laundry attendant at minimum wage. She continues to suffer from shortness of breath and weakness and attacks of bronchitis. Although the bronchitis attacks do not occur monthly, they occur regularly, especially when she is exposed to dampness, air conditioning or fans. In 1976 plaintiff was given a brown lung breathing test and was referred by the Brown Lung Association to Dr. William Z. Wood, a pulmonary disease specialist, who is also a member of the medical faculty at the University of North Carolina at Chapel Hill and a member of the Industrial Commission's Textile Occupational Disease Panel.

Dr. Wood testified in Chapel Hill at a later stage of the hearings. During his examination of plaintiff on 18 November 1976 he conducted several lung function tests which revealed a reduction in the forced vital capacity of the lung and a reduction in the volume of forced exhalation, as well as a mild reduction in the oxygen level of the arterial blood gases. Dr. Wood concluded that, although there was a problem with the ability of the patient properly to perform the tests, the studies showed lung dysfunction due to chronic bronchitis and emphysema of nonspecific etiology. He did testify that in his report filed with the Industrial Commission following his examination of plain-

tiff that she had been employed in the phase of textile manufacturing where cotton dust hypersensitivity, *i.e.* chronic lung disease and byssinosis, is high in incidence. However, in that same report Dr. Wood indicated that plaintiff did not show the classic symptomatic history of onset and progression of the textile occupational disease. Plaintiff did not indicate that her episodes of bronchitis were brought on after exposure to cotton dust, but rather that they occurred in cooler and damper weather and that she could not tolerate air conditioners, which indicated an irritated reaction. Dr. Wood stated that her occupational exposure could or might have caused, *i.e.* was possibly a cause of her respiratory problems, but that he did not know the initiating cause.

Deputy Commissioner Denson made findings concerning plaintiff's work history, her medical history and treatment and tests, and her present employment. She further found that "[p]laintiff's chronic obstructive pulmonary disease is not due to her exposure to cotton dust and lint in her employment with defendant employer." She concluded as a matter of law that plaintiff had not contracted an occupational disease arising out of and in the course of her employment, and accordingly denied compensation. On appeal to the full Industrial Commission from the Opinion and Award of the Deputy Commissioner, the Commission affirmed the denial of compensation and adopted that Opinion and Award as its own. From this Opinion and Award plaintiff appeals.

*Davis, Hassell & Hudson by Charles R. Hassell, Jr. and Robin E. Hudson for plaintiff appellant.*

*Maupin, Taylor & Ellis by Richard M. Lewis, for defendant appellees.*

PARKER, Judge.

Plaintiff bases her claim for disability benefits under the North Carolina Workers' Compensation Act upon the provisions of G.S. 97-53(13) and G.S. 97-52. G.S. 97-53 lists the diseases and conditions deemed to be "occupational diseases." Subsection (13) includes the following as an "occupational disease":

Any disease, other than hearing loss covered in another subdivision of this section, which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment.

Under G.S. 97-52, "disablement" of an employee resulting from an "occupational disease" described in G.S. 97-53 is to be "treated as the happening of an injury by accident within the meaning of the North Carolina Workers' Compensation Act," thus triggering the award of benefits.

[1] In *Booker v. Medical Center,* 297 N.C. 458, 256 S.E. 2d 189 (1979) our Supreme Court discussed at length the elements necessary to prove the existence of the compensable "occupational disease" defined by G.S. 97-53(13). The first two elements, that a disease be "characteristic" of a trade or occupation and that it not be an ordinary disease of life "to which the general public is equally exposed outside of the employment" are expressly required by the language of the statute. The third element was stated by the court in *Booker v. Medical Center, supra,* as follows:

The final requirement in establishing a compensable claim under subsection (13) is proof of causation. It is this limitation which protects our Workmen's Compensation Act from being converted into a general health and insurance benefit act. *Bryan v. Church,* 267 N.C. 111, 115, 147 S.E. 2d 633, 635 (1966). In *Duncan v. Charlotee,* 234 N.C. 86, 91, 66 S.E. 2d 22, 25 (1951) we held that the addition of G.S. 97-53 to the Act "in nowise relaxed the fundamental principle which requires proof of causal relation between injury and employment. And nonetheless [sic], since the adoption of the amendment, may an award for an occupational disease be sanctioned unless it be shown that the disease was incident to or the result of the particular employment in which the workmen was engaged."

297 N.C. at 475, 256 S.E. 2d at 200.

The rule of causation in the field of workers' compensation where the right to recover is based on injury by accident has been that the employment need not be the sole causative force to render an injury compensable. If the employee, "by reason of constitutional infirmities is predisposed to sustain injuries while engaged in labor, nevertheless the leniency and humanity of the law permit him to recover compensation if the physical aspects of the employment contribute in some reasonable degree to bring about or intensify the condition which renders him susceptible to such accident and consequent injury." *Vause v. Equipment Co.*, 233 N.C. 88, 92, 63 S.E. 2d 173, 176 (1951). A similar rule of causation has been implied in cases where compensation for occupational disease is sought; however, if a disease is produced by some extrinsic or independent agency, it may not be imputed to the occupation or the employment. *Duncan v. Charlotte*, 234 N.C. 86, 66 S.E. 2d 22 (1951).

Plaintiff contends on this appeal that the Commission failed to make proper findings of fact regarding compensability under G.S. 97-53(13) on the grounds that no findings were made with respect to the cause of plaintiff's chronic bronchitis and pulmonary emphysema or to the issue of whether her years of occupational exposure exposed plaintiff to a greater risk of contracting pulmonary disease than the general public.

It is well established that the Industrial Commission must make specific findings of fact as to each material fact upon which the rights of the parties in a case involving a claim for compensation depend. *Wood v. Stevens & Co.*, 297 N.C. 636, 256 S.E. 2d 692 (1979); *Thomason v. Cab Co.*, 235 N.C. 602, 70 S.E. 2d 706 (1952). If the findings of fact of the Commission are insufficient to enable the court to determine the rights of the parties upon the matters in controversy, the cause must be remanded to the Commission for proper findings of fact. *Young v. Whitehall, Co.*, 229 N.C. 360, 49 S.E. 2d 797 (1948); *Gaines v. Swain & Son, Inc.*, 33 N.C. App. 575, 235 S.E. 2d 856 (1977).

[2, 3] In the present case, were it not for the Commission's Finding of Fact No. 12, we would agree with plaintiff's contention that there were insufficient findings to support the Commission's denial of compensation, principally because a number

of the other "findings" are mere recitals of the opinions of the medical experts which, in themselves, could not properly form the basis for conclusions of law as to compensability. *See, Gaines v. Swain & Son, Inc., supra.* Finding of Fact No. 12 recites:

> Plaintiff's chronic obstructive pulmonary disease is not due to her exposure to cotton dust and lint in her employment with defendant employer.

Although cast in the form of a negative finding, it does provide a sufficient basis for the conclusion of law that plaintiff's disablement is noncompensable because, as indicated in *Booker v. Medical Center, supra,* a claimant's right to compensation for an occupational disease under G.S. 97-53(13) and G.S. 97-52 depends upon proper proof of causation, and the burden of proving each and every element of compensability is upon the plaintiff. *Richards v. Nationwide Homes,* 263 N.C. 295, 139 S.E. 2d 645 (1965), *Aylor v. Barnes,* 242 N.C. 223, 87 S.E. 2d 269 (1955). It is true that, where the Commission awards compensation for disablement due to an occupational disease encompassed by G.S. 97-53(13), the opinion and award must contain explicit findings as to the characteristics, symptoms and manifestations of the disease from which the plaintiff suffers, as well as a conclusion of law as to whether the disease falls within the statutory provision. *Wood v. Stevens, supra.* However, such findings should not be necessary upon the Commission's finding that the disease, whatever its manifestations and whatever its symptoms, was not due to causes or conditions characteristic of the particular employment in which the employee was engaged. The denial of compensation may be predicated upon the failure of the claimant to prove any one of the elements of compensability.

[4] Having determined that Finding of Fact No. 12 is sufficient to support the Commission's denial of plaintiff's claim, we consider whether that finding is supported by competent evidence in the record. If so, it is conclusive and binding upon this Court. *Cole v. Guilford County,* 259 N.C. 724, 131 S.E. 2d 308 (1963); *Vause v. Equipment Co., supra.* Dr. William Z. Wood, Jr., the pulmonary disease specialist and member of the Industrial

Moore v. Stevens & Co.

Commission's Textile Occupational Disease Panel, testified at length concerning plaintiff's medical condition. Although he stated that plaintiff had been employed in an area of cotton manufacturing in which the incidence of employment-related chronic lung disease is highest, he also testified that plaintiff did not exhibit the usual symptomatic history of symptoms onset and progression classical for this problem:

> By that I mean that the usual and classical onset is one of increasing symptoms in the onset of symptoms on the first day returning to work after a period away from the mill. The symptoms usually described is [sic] a sensation of tightness and difficulty breathing which may be associated with cough. This seems to improve with continued exposure so by the second, third, fourth day the symptoms are much less or may be completely absent. That's generally referred to as Grade one-half. And then, as the continued progression of the symptoms occur the symptoms may be present on more than one day after returning to work. That is, I think, usually given the Grade one to the point it is present throughout the work week, with evidence of lung dysfunctions, Grade two and then, failure to improve even after being away from work is referred to as Grade three, with symptoms of tightness, shortness of breath, often times accompanied by cough and sputum production. I am saying that Mrs. Moore did not give that progression of symptoms, that is correct. Her major complaint has been that of cough and shortness of breath. There has been some sputum production that has fluctuated in intervals throughout some forty years-thirty or forty years of her history. The major symptom being shortness of breath. She also indicated frequent episodes of what she called bronchitis, that is the story she gave to me. Yes, sir. She also told me that these episodes came on in cooler and damper periods of time and that she could not tolerate air conditioners or cool or damp weather. That indicated to me that she has airways that are sensitive to temperature and climatic change. This is frequently seen in people who have a variety of lung diseases.

\* \* \*

She did not indicate that these episodes were brought on after exposure to cotton dust. In fact, an air conditioner or the cooler, damper weather that brought on these symptoms could be classified as an irritant.

Further, in explaining his response to a hypothetical question posed by plaintiff's counsel in which he stated that, in his opinion, plaintiff's respiratory disease "could or might have been caused by her occupational exposure," Dr. Wood stated that that opinion referred to "possibility" rather than "probability." In light of Dr. Wood's testimony, the Commission was justified in finding that plaintiff's chronic pulmonary disease "is not due to her exposure to cotton dust and lint in her employment with defendant employer."

[5] Plaintiff has also excepted and made the basis of an assignment of error on the grounds of the insufficiency of the evidence to support it a portion of finding of fact no. 5 which recites: "Beginning in March of 1966 [plaintiff] complained to [her family practitioner] of upper respiratory problems and these problems or problems [sic] which he diagnosed as bronchial problems continued more or less constantly to the present time. This happened more often during the fall and winter months and Dr. Boone connected it with a viral infection or some other irritant or allergic reaction to cold weather." Although this "finding" is certainly not a clear statement of fact, there is some evidence to support it. Dr. Boone testified:

I mentioned several times that she had bronchitis. I think it seemed to be more severe at certain times of the year, say in the Fall. Looking back, she had one spell first in December, the hemoptysis occurred in December. She had a spell here in October, another in October. She had a year-round problem but — here is one in June. So she had it at other times. One in November. I think it is more common in everyone, people with normal lungs as well as people with lung disease, in the fall and winter months, to have bronchitis flareups. It is sort of to be expected. I think the weather has something to do with it. It would not be suggestive of an allergy. No, more like an infection, the type of thing she had.

Thus, the record supports the finding that plaintiff's respiratory problems seemed to worsen in colder weather. Although there are inaccuracies in the Commission's reference to the infection as being "viral" and in the reference to an "allergic" reaction to cold weather, these inaccuracies do not detract from the main thrust of Finding of Fact No. 5, *i.e.* that plaintiff's pulmonary problems were worse in the fall and winter months and that the cold weather adversely affected those problems.

Finally, plaintiff challenges the Commission's inaccurate statement of the stipulation of the parties regarding plaintiff's work history. The parties stipulated that she had worked from 1925-1935 in the spinning room of defendant's mill, but the findings of fact reflect only that she worked from 1941-1976. Although such an omission is clearly erroneous, it does not require a rehearing of this case. Plaintiff's claim was denied on the ground of her failure to prove causation. The testimony of the expert witnesses, Dr. Boone and Dr. Wood, upon which the Commission based its finding that plaintiff's chronic obstructive pulmonary disease is not due to occupational exposure, discloses that their opinions were based upon their knowledge of plaintiff's full employment history, including the ten-year period inadvertently omitted from the Commission's finding.

Thus, the Commission's crucial finding is supported by sufficient evidence to justify the denial of compensation in the present case. The Opinion and Award of the Full Commission is

Affirmed.

Judges MARTIN (Harry C.) and HILL concur.