The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Edward Garner. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff began working for the defendant-employer on February 9, 1989. Plaintiff's job for the defendant-employer was that of a motor drive assembler. Plaintiff primarily assembles drives and housing for a small motor. Assembly is done at a work table where plaintiff may sit if she so desires. Generally speaking, plaintiff takes about 2 and 1/2 hours to assemble one housing and drive from start to finish. Her job involves trimming wires, putting plugs in, putting the fitting on the motor, and putting the screws and tightening them. Plaintiff uses several different tools to assemble the housing and drive unit, and the various tools include an electric screw driver, hand wrenches, wire strippers, pliers, wirecrimpers, alien wrenches, a hammer, and electric drills. Plaintiff typically would not complete one drive or housing in any one sitting, but rather would do several functions related to the assembly on different machines and then do something else.
2. Plaintiff first began experiencing problems with her right hand in November 1991. On November 20, 1991 plaintiff complained to Dr. Long of severe pain in her right hand with numbness and tingling in the median nerve distribution. Dr. Long noted that her complaints were characteristic of carpal tunnel syndrome. On March 12, 1992, plaintiff again presented to Dr. Long with multiple complaints which included right hand discomfort with numbness and tingling particularly in the median nerve distribution. Plaintiff also exhibited some mild weakness in her right hand at that time.
3. On April 29, 1992, plaintiff was again treated by Dr. Long. Dr. Long noted that plaintiff had what would clinically appear to be marked carpal tunnel with numbness in the right hand.
4. Plaintiff was next seen at the Nalle Clinic on May 27, 1992 by David Redding Kingery, M.D., who found that plaintiff had a positive nerve compression test, positive tinel's and numbness in the characteristic distribution. Thereafter, on June 5, 1992, Dr. Kingery performed right carpal tunnel release surgery on plaintiff. Plaintiff returned to the Nalle Clinic post-surgery on June 6, 1992, July 17, 1992 and August 2, 1992 to see Dr. Kingery. On August 24, 1992, ten weeks post-surgery, plaintiff was much improved in her right hand and indicated that she would like to return to work.
5. Upon return to work, plaintiff continued to have problems with right carpal tunnel syndrome. Plaintiff returned to see Dr. Long on September 16, 1992, and presented with marked numbness and mild weakness in the median nerve distribution. Dr. Long was of the opinion that plaintiff was suffering from severe carpal tunnel recurrence. Plaintiff again returned to see Dr. Long on September 28, 1992, and continued to complain of severe pain in her right hand.
6. Dr. Long referred plaintiff to P.C. Perlik, M.D. Dr. Perlik is an orthopedic surgeon who specialized in surgery of the hand. Dr. Perlik examined plaintiff on December 17, 1992, and reflects in his notes that despite plaintiff's subjective complaints, she should continue to use her hand and that she should be at work on light duty. On January 8, 1993, plaintiff returned to see Dr. Perlik complaining of bilateral hand pain with greater pain in her right hand. Dr. Perlik advised plaintiff that he was quite confused about her inability to use her hand as she had, objectively, a good carpal tunnel release operation. Dr. Perlik referred plaintiff to the Gaul Hand Center for rehabilitative exercises.
7. Plaintiff returned to Dr. Long on March 9, 1993, with complaints of hand pain. Dr. Long noted in his record that plaintiff had rather marked and severe bilateral hand pain. At that appointment, Dr. Long noted that he would refer plaintiff to Gaul Orthopedics to reassess her hands.
8. On June 9, 1993, plaintiff was seen by John Stuart Gaul, M.D. Dr. Gaul's notes relate that "the findings support . . . that she [plaintiff] probably suffers from adhesive median neuropathy of the carpal tunnel, following what is considered to be an adequate decompression by another surgeon last year." Dr. Gaul recommended that plaintiff have outpatient surgical median neurolysis.
9. On June 21, 1993, Dr. Gaul performed a neurolysis of the median nerve, finding that the nerve itself has frequent adhesive bands adjacent to carpal tunnel radially and ulnarly. Subsequent to the surgical intervention, Dr. Gaul saw plaintiff a number of times post-operatively and recommended physical therapy several times a week.
10. Plaintiff returned to see Dr. Gaul on October 15, 1993, and the examination on that date confirmed "a fairly strong hand, range of motion of the fingers and hand normal." Plaintiff next saw Dr. Gaul on October 27, 1993. According to Dr. Gaul's notes from that examination, the plaintiff continued to show gradual, good recovery toward normal. Likewise, the Minnesota Manipulation test and the Purdue Peg Board test "looked good" with plaintiff's wrist and hand showing virtually normal movement and without more swelling or thickening and only minimal tenderness at the carpal tunnel. On that same date, Dr. Gaul filled out a return to work form so that plaintiff could return to work without restrictions.
11. By stipulations between the parties, plaintiff was out of work from April 28, 1992 through August 25, 1992, October 5, 1992 through December 21, 1992, and June 21, 1993 through October 27, 1993.
12. All of the treating physicians agreed that repetitive motion is a cause of carpal tunnel syndrome, and that the plaintiff's employment placed her at greater risk of contracting this condition as compared to the general public. Moreover, Dr. Gaul and Dr. Long were of the opinion that the plaintiff's work was the probable cause of the condition, while Dr. Kingery was of the opinion that her work was a possible cause.
13. As a result of this occupational disease, plaintiff was temporary totally disabled for the periods stipulated to in finding of fact No. 11.
14. Plaintiff suffers a permanent partial impairment of 20 percent to her hand as a result of this occupational disease.
* * * * * * * * * * *
Based upon the findings of fact, The Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. In workers' compensation cases, the employee bears the burden of proving each and every element of compensability. See, Harvey v. Raleigh Police Department, 96 N.C. App. 28,384 S.E.2d 549, disc. rev. denied, 325 N.C. 706, 388 S.E.2d 454
(1989). A claimant's right to compensation for an occupational disease under N.C.G.S. § 97-53 (13) and N.C.G.S. § 97-52
depends upon proper proof of causation, and the burden of proving each and every element of compensability is on the plaintiff. Moore v. J.P. Stevens Company, 47 N.C. App. 744,269 S.E.2d 159, cert. denied, 301 N.C. 401, 274 S.E.2d 266 (1980).
2. To prove the existence of a compensable "occupational disease" under Subsection 13, the plaintiff must establish that (1) the disease is characteristic of or peculiar to a particular trade or occupation; (2) the disease is not a ordinary disease of life to which the public is equally exposed outside of the employment; and (3) there is causal relationship between the disease and the employment. Hansel v. Sherman Textiles, 304 N.C. 44,283 S.E.2d 101 (1981). These elements were proved by all three of the treating physicians.
3. Plaintiff's occupational disease or carpal tunnel syndrome is due to causes and conditions which are characteristic of and peculiar to her employment with defendant-employer. N.C. G.S. § 97-53 (13); Rutledge v. Tultex Corp., 308 N.C. 85,301 S.E.2d 359 (1983).
4. As a proximate result of her occupational disease, plaintiff was temporarily totally disabled to earn wages in any employment for a period of 46 and 5/7's weeks. N.C.G.S. § 97-29.
5. As a result of the occupational disease, plaintiff retains a 20 percent permanent partial impairment to her hand. N.C.G.S. § 97-31.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay compensation to plaintiff for temporary total disability at the rate of $172.79 per week for 46 and 5/7's weeks. This compensation has accrued and shall be paid to plaintiff in a lump sum subject to an attorney's fee hereinafter approved.
2. Defendants shall pay compensation to plaintiff at the rate of $172.79 per week for 40 weeks for the 20 percent permanent partial impairment she suffers to the hand. This compensation has accrued and shall be paid to plaintiff in a lump sum subject to an attorney's fee hereinafter approved. N.C.G.S. § 97-31 (12).
3. Defendants shall pay all medical expenses incurred by plaintiff as a result of this occupational disease when bills for same have been submitted to and approved by the Industrial Commission.
4. An attorney's fee in the amount of 25 percent of all compensation due plaintiff pursuant to this Opinion and Award is hereby approved for plaintiff's counsel. Said amount shall be deducted from the aforesaid award and paid directly to plaintiff's counsel.
5. Defendants shall pay the costs due the Commission including expert witness fees in the amount of $225.00 to Dr. William J. Long, $225.00 to Dr. David R. Kingery and $225.00 to Dr. John S. Gaul.
 S/ ______________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ ____________________ BERNADINE S. BALLANCE COMMISSIONER
S/ ___________________ J. HOWARD BUNN, JR. CHAIRMAN
CMV/CNP/mj 5/24/95