Upon review of the competent evidence of record with respect to the errors assigned, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms, with modifications, the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement are received into evidence.
2. A black index of records marked as stipulated exhibit 1 was received into evidence.
3. Subsequent to the hearing, the parties submitted a statement by J. T. Garrett that was marked as stipulated exhibit 2 and received into evidence.
 ***********
Based upon all of the competent evidence adduced from the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was an unemployed fifty-six-year-old male who had completed high school coursework. Plaintiff's prior work history includes jobs in both farming and textiles. At the time of the hearing before the Deputy Commissioner, plaintiff was attending Richmond Community College in an effort to obtain a Human Services degree.
2. Prior to his employment with defendant-employer, plaintiff received a yearly cortisone shot for pain in his shoulders. Plaintiff's preexisting bilateral shoulder condition had not resolved prior to his beginning employment with defendant-employer.
3. Plaintiff was employed by defendant-employer as a sorter from 1990 until he was laid off in November of 1995. Plaintiff's job consisted of sorting different bundles of sweatpants. Plaintiff would pick up a bundle, sling it with his right arm, and then go back and get another bundle. Each bundle of garments weighed between eight and twenty pounds. Plaintiff unloaded between forty-eight and sixty bundles per buggy. He unloaded between eight and ten buggies full of bundles each day. Plaintiff performed this activity eight hours a day, five days a week.
4. During the first week after plaintiff was employed as a sorter with defendant-employer, plaintiff experienced pain in both of his shoulders.
5. Prior to being laid off, plaintiff had repeatedly complained of the pain he was experiencing in his shoulders.
6. Plaintiff's performance of his job duties as a sorter for defendant-employer aggravated his preexisting bursitis, impingement syndrome, and degenerative arthritis of the acromiclavicular joint in his right shoulder. This aggravation resulted in the tearing of plaintiff's rotator cuff in his right shoulder.
7. Plaintiff's preexisting right shoulder condition placed him at a high risk of re-developing a shoulder condition when he engaged in repetitive motion of the shoulder.
8. No evidence was elicited from the testifying medical experts, Michael William Walker, M.D., and Ward S. Oakley, Jr., that would support a finding that plaintiff's job duties placed him at an increased risk of contracting or aggravating his preexisting shoulder conditions as compared to the general public not so employed, or as compared to the general run of occupations. To the contrary, Dr. Walker indicated that plaintiff was not placed at an increased risk as compared to the general public not so employed.
9. The greater weight of the evidence fails to show that plaintiff's job duties as a sorter for defendant-employer placed him at an increased risk of contracting or aggravating his preexisting impingement syndrome, bursitis and degenerative arthritis of his acromiclavicular joint in his right shoulder or any condition in his left shoulder as compared to the public not so employed, or as compared to the general run of occupations.
10. On 29 February 1996, Dr. Oakley performed a surgical repair of plaintiff's rotator cuff in his right shoulder.
11. As a result of his torn rotator cuff in his right shoulder and the resulting surgery by Dr. Oakley, plaintiff was unable to earn any wages from 29 February 1996 to 14 May 1996.
12. As a result of his torn rotator cuff in his right shoulder and the resulting surgery by Dr. Oakley, plaintiff has sustained a twenty percent permanent partial disability to his right shoulder.
13. Since plaintiff was laid off, plaintiff has only sought employment with one employer. Since having been laid off, plaintiff has not conducted a reasonable job search.
14. Since 14 May 1996, plaintiff has been medically able to return to work.
15. Given his physical condition and prior work experience, it would not have been futile for plaintiff to have looked for employment after he was laid off
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff had the burden of proving each and every element of his occupational disease claim. Moore v. J.P. Stevens Co., 47 N.C. App. 744, 269 S.E.2d 159, disc. reviewden., 301 N.C. 401, 274 S.E.2d 226 (1980). In addition to proving causation, plaintiff was required to prove, by the greater weight of the evidence, that his disease was due to causes and conditions characteristic of and peculiar to his particular employment or occupation such that his employment placed him at an increased risk of contracting the disease as compared to members of the general public not so employed, or as compared to the general run of occupations. N.C. Gen. Stat. § 97-53(13); Booker v. Duke Medical Center, 297 N.C. 458,256 S.E.2d 189 (1979).
2. "Bursitis due to intermittent pressure in the employment" is a statutorily enumerated occupational disease. See N.C. Gen. Stat. § 97-53(17). If plaintiff had contracted this statutorily enumerated disease, he would not have been required to prove that the employment placed him at an increased risk of contracting or aggravating that disease as compared to the general public not so equally exposed. Although there was evidence that plaintiff had preexisting bursitis, there is no expert evidence to establish that this bursitis was the result of intermittent pressure in employment. Without expert evidence as to the type of bursitis that plaintiff contracted prior to his employment with defendant-employer, plaintiff was required to prove by the greater weight of the evidence that his job duties placed him at an increased risk of aggravating his preexisting bursitis condition as compared to the public not so exposed, or as compared to the general run of occupations. Plaintiff cannot prove the "increased risk" element of his claim by relying on evidence that he engaged in repetitive activity that caused or significantly contributed to the disease. Furthermore, he cannot prove "increased risk" through expert testimony that, because of his preexisting condition or predisposition, the job placed him at an increased risk of contracting a disease.
3. Plaintiff failed to prove that he suffers from a disease that is characteristic of and peculiar to his occupation with defendant-employer but excluding all ordinary diseases of life to which the general public is equally exposed, or that his occupation exposed him to an increased risk of contracting or aggravating either of his shoulder conditions as compared to the risk involved in the general run of occupations.
4. As plaintiff failed to carry his burden of proof regarding the element of increased risk, he is not entitled to benefits under the Workers' Compensation Act. N.C. Gen. Stat. §97-53(13).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following
 AWARD
1. Plaintiff's claim for his injuries to this right and left upper extremities is hereby DENIED.
2. Defendants shall pay expert witness fees in the amount of $160.00 to George Page and $325.00 to Dr. Walker.
3. Each party shall pay its own costs.
 S/ _______________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/ __________________ DIANNE C. SELLERS COMMISSIONER
S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
RCR:jbd