The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Young. As the appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives, the Full Commission affirms the Opinion and Award of the Deputy Commissioner as follows:
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer at all relevant times herein.
3. Hartford Insurance Company was the carrier on the risk at all relevant times herein.
4. The parties stipulated to the following:
 a. Exhibit 1 — Form 18s against Glendale Hosiery Company dated 5 May and 3 June 1997 filed with the Commission in May and June, 1997;
 b. Exhibit 2 — Form 19 filed by Glendale Hosiery Company with the Commission in July, 1996;
 c. Exhibit 3 — Form 61 filed by Glendale Hosiery Company with the Commission in July, 1996;
 d. Exhibit 4 — Leave of Absence requests by the plaintiff with attachments dated 6 February and 19 March 1997;
 e. Exhibit 5 — Form 22s for time periods from 22 February 1995 to 22 February 1996, from 3 February 1996 to 3 February 1997, from 3 February 1997 to 28 July 1997, and from 28 July 1997 to the present for plaintiff's employment with that employer;
 f. Exhibit 6 — Application by plaintiff to MedPoint plan for payment for NCV studies on her hands dated 7 February 1997;
 g. Exhibit 7 — Defendant's job description for plaintiff's job dated 19 May 1997;
 h. Exhibit 8 — One hundred and eight-five (185) pages of medical records from UNC Hospitals in Chapel Hill, North Carolina;
 i. Exhibit 9 — Thirty-six (36) pages of medical records from Dr. Anuj Sharma of Siler City, North Carolina;
 j. Exhibit 10 — Five (5) pages of medical records from Dr. N. Rao Kothapalli of Siler City, North Carolina;
 k. Exhibit 11 — Two (2) pages of medical records reflecting NCV study on 27 February 1997 by Sayed Naqvi, M.D. and Thomas B. Braun, M.D.;
 l. Exhibit 12 — Medical records of Dr. Laurence Dahners.
 ***********
Based upon all the evidence adduced from the record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a 28 year old high school graduate. Plaintiff weighed about 260 pounds.
2. Plaintiff began working for defendant-employer as a line closer in August 1987. Plaintiff's duties included grasping "leg blanks" and stretching them onto the rotating rocker arm so that the two tubes of pantyhose could be mechanically sewn together. Plaintiff also inspected every sixth pair of pantyhose for stitching quality.
3. In August 1995, plaintiff became pregnant. On 22 February 1996 at North Carolina Memorial Hospital, plaintiff was diagnosed with pregnancy induced carpal tunnel syndrome after complaining of bilateral hand coldness, tingling and swelling. Plaintiff, however, had never before reported hand or wrist pain, tingling or numbness to defendant-employer.
4. During the last trimester of plaintiff's pregnancy, she was diagnosed with pre-eclampsia which also caused pain in her hands and arms.
5. Plaintiff missed work due to maternity leave from early April 1996 until early June 1996. Plaintiff delivered her baby on 1 May 1996.
6. Plaintiff returned to work on 10 June 1996. On 11 July 1996, plaintiff reported to the plant nurse, Mary Lou Buchler, that she was having problems with her hands and wrists. Through the remainder of 1996, plaintiff complained of problems in her hands and wrists to Guy Pritchard, plaintiff's supervisor. However, the medical records of Drs. Sharma and Kothapalli do not reflect that plaintiff's condition worsened once she returned to work following her maternity leave.
7. In February 1997, plaintiff's family physician, Anuj Sharma, took plaintiff out of work from 6 February 1997 until 16 February 1997. 6 February 1997 was the first day plaintiff had ever missed work as a result of her carpal tunnel syndrome, or for pain, tingling and numbness in her hands and wrists.
8. Dr. Sharma referred plaintiff to general surgeon, Dr. Kothapalli, after plaintiff underwent median nerve conduction studies which revealed bilateral median nerve compression.
9. Dr. Kothapalli subsequently diagnosed plaintiff with bilateral carpal tunnel syndrome, which was much worse on the left. Dr. Kothapalli performed a surgical release of plaintiff's left carpal tunnel median nerve on 21 March 1997. Plaintiff was unable to work following the surgery from 19 March 1997 to 16 April 1997.
10. Plaintiff returned to work on 17 April 1997.
11. Dr. Sharma, who did not treat, evaluate or examine plaintiff prior to February 1996, opined that carpal tunnel syndrome in pregnancy is very common and that it was possible that plaintiff's carpal tunnel syndrome could remain symptomatic for several months following plaintiff's pregnancy. Dr. Sharma did not view first-hand plaintiff's job duties; however, she stated that plaintiff's job duties as described by plaintiff's counsel could have contributed to plaintiff's development of carpal tunnel syndrome. Although Dr. Sharma opined that plaintiff's job duties probably put plaintiff at an increased risk of developing carpal tunnel syndrome, she could not opine with a reasonable degree of medical certainty that plaintiff's job duties with defendant-employer significantly contributed to plaintiff's development of carpal tunnel syndrome.
12. Dr. Kothapalli, who did not examine, evaluate or treat plaintiff prior to March 1997, could not opine to a reasonable degree of medical certainty exactly what caused plaintiff's carpal tunnel syndrome. Dr. Kothapalli opined that pregnancy can cause carpal tunnel syndrome and that it was possible that pregnancy induced carpal tunnel syndrome, such as plaintiff's, could remain symptomatic for several months following pregnancy. Dr. Kothapalli further stated that pre-eclampsia and obesity are also contributing factors of carpal tunnel syndrome.
13. Dr. Kothapalli did not view plaintiff's job activities first-hand, but based upon a description of those duties provided by plaintiff's counsel, opined that plaintiff's job duties probably put plaintiff at an increased risk of developing carpal tunnel syndrome. However, he could not opine with a reasonable degree of medical certainty that plaintiff's job duties with defendant-employer significantly contributed to plaintiff's development of carpal tunnel syndrome.
14. There is insufficient competent medical evidence in the record to establish that plaintiff's employment with defendant-employer was causally related to plaintiff contracting carpal tunnel syndrome.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff must prove three elements to establish existence of an occupational disease: (1) there must be proof of a causal connection between the disease and the employment, (2) the disease must be characteristic of a trade or occupation, and (3) the disease must not be an ordinary disease of life to which the public is equally exposed outside of employment. N.C. Gen. Stat. § 97-53(13); Perry v. Burlington Industries, Inc.,80 N.C. App. 650, 343 S.E.2d 215 (1986), citingHansel v. Sherman Textiles, 304 N.C. App. 44, 283 S.E.2d 101
(1981). The burden of proving each and every element of compensability falls squarely on plaintiff. Hansel,304 N.C. App. at 54, 283 S.E.2d at 106.
2. In the instant case, the medical evidence is insufficient to establish that plaintiff's employment with defendant-employer was causally related to plaintiff contracting carpal tunnel syndrome. Therefore, she is not eligible for compensation under the Act. Hansel v. Sherman Textiles, 304 N.C. App. 44,283 S.E.2d 101 (1981).
3. The competent evidence in the record fails to establish that plaintiff's job duties with defendant-employer aggravated or enhanced her condition in any way. Plaintiff has not suffered an aggravation of a pre-existing or job related condition; therefore, she is not eligible for compensation under the Act.Robinson v. J.P. Stevens Co., 57 N.C. App. 619,292 S.E.2d 144 (1982).
4. Since plaintiff failed to carry her burden of proof in this case, she is not entitled to benefits under the North Carolina Workers' Compensation Act. Moore v. J.P. Stevens Co.,47 N.C. App. 744, 269 S.E.2d 159, disc. review denied,301 N.C. 401, 274 S.E.2d 226 (1980).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim is and under the law must be DENIED.
2. Each party shall bear their own costs.
 ***********
This the ___ day of January 1999.
 S/_________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/______________________ RENÉE C. RIGGSBEE COMMISSIONER
S/______________________ CHRISTOPHER SCOTT COMMISSIONER