The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Bost and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with the modification of language denying plaintiffs claim for compensation for her left elbow epicondylitis condition.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant at all relevant times.
3. Defendant was an approved self-insured at the relevant times.
4. Plaintiffs average weekly wage for the March 23, 1994 date of injury was $342.80 with a corresponding weekly compensation rate of $228.54. Plaintiffs average weekly wage for the February 8, 1995 alleged date of injury or onset was $362.40, with a corresponding compensation rate of $241.61.
5. It was agreed that plaintiffs medical records relating to the medical treatment she received in reference to her alleged injuries were made a part of this record along with rehabilitation records from the Southern Rehabilitation Network and the Berkley Care Network. Furthermore, the parties stipulated to a videotape depicting four of defendants work stations, including the 125 S 1 inch Globe Valve, 62 inch Swing Check Valve, V115 Disc Holder and 80 inch Ball Valve work stations.
6. Pursuant to a March 19, 1998 Consent Order the parties added the following stipulated facts:
 6(a). On March 23, 1994, plaintiff came under the care of Dr. Gary Kuzma, who ordered nerve conduction studies of plaintiffs hands. These studies were performed on April 18, 1994.
 6(b). The nerve conduction studies revealed right carpal tunnel syndrome. This condition was initially treated conservatively.
 6(c). Dr. Gary Kuzma performed a right carpal tunnel release on Plaintiff on June 21, 1994. Dr. Kuzma performed a left carpal tunnel release on plaintiff on August 23, 1999. Dr. Kuzma subsequently held Plaintiff out of work from June 21, 1994 through November 13, 1994. Defendant accepted liability for plaintiffs disability and paid temporary total disability at the rate of $228.54 per week to Plaintiff during this period. This claims Industrial Commission file number is 446231.
 6(d). Plaintiff returned to work for United Brassworks on November 14, 1994, and continued treatment by Dr. Gary Kuzma.
 6(e). Dr. Kuzma rated plaintiff as suffering from a 20% permanent functional impairment of the right hand on March 20, 1995 as a result of her carpal tunnel syndrome. Defendant paid plaintiff 40 weeks of compensation at the rate of $228.54 per week for the 20% permanent partial disability to her right hand. This totaled $9,141.60.
 6(f). Dr. Kuzma rated plaintiff as suffering from a 15% permanent functional impairment of the left hand on March 20, 1995 as a result of her carpal tunnel syndrome. Defendant paid plaintiff 30 weeks of compensation at the rate of $228.54 per week for the 15% permanent partial disability to her left hand. This totaled $6,856.20.
 6(g). Dr. Kuzma noted on October 26, 1995 that plaintiff had not responded over the previous ten months to conservative treatment for right lateral epicondylitis. Therefore, he recommended surgery and, on November 10, 1995, performed a surgical procedure to reattach the extensor origin and to deride the radiohumeral joint of plaintiffs right elbow. Defendant accepted liability for the right lateral epicondylitis under Industrial Commission File No. 585438 with the date of injury or onset of February 8, 1995. Plaintiff and defendant agree that plaintiff suffers from a new 5% permanent functional impairment of the right arm over and above the 20% permanent partial disability previously assigned to the right hand. Plaintiff is entitled to payment for the additional 5% permanent partial disability of the right arm.
 6(h). Plaintiff was out of work from November 15, 1995 up through and including April 14, 1996 and was paid temporary total disability by defendants at the rate of $241.61 per week for this time period. These payments were compensation for the temporary total disability caused by her right lateral epicondylitis.
 6(i). The remaining issues to be decided by the Commission are:
 i. Whether plaintiffs left elbow condition was caused by her work for defendant; and, if so,
 ii. Whether plaintiff unjustifiably refused to return to work to a job with defendant within her physical capacity; and, if not,
 iii. Whether plaintiff continued to be temporarily totally disabled as a result of the injuries to her right hand, left hand, right arm, and left arm?
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. As of the date the hearing before the deputy commissioner, plaintiff was fifty-seven years old. She completed part of the seventh grade and is right hand dominant. She tests below grade level in all skills.
2. Plaintiff was employed by defendant from 1973 through 1983. In 1983, she left defendants employ for approximately five years, during which time she worked on a Christmas tree farm. Plaintiff returned to defendant in 1988 and remained there until July 25, 1996.
3. Plaintiffs primary job for defendant was to assemble a variety of steam and ball valves of various sizes.
4. In 1994 plaintiff began complaining of numbness and pain in both hands. On March 23, 1994 she presented to Dr. Gary Kuzma, an orthopedist and hand surgeon. Dr. Kuzma diagnosed plaintiff with bilateral carpal tunnel syndrome and performed surgical releases on both hands during the summer of 1994. Plaintiff was ultimately given permanent partial disability ratings of twenty percent to the right hand and fifteen percent to the left hand. Defendant paid the medical costs of plaintiffs operations. Defendant also paid plaintiff temporary total disability compensation benefits for the period she was out of work, as well as permanent partial disability compensation for the ratings to her hands pursuant to a Form 21.
5. Following a functional capacity evaluation obtained on October 13, 1994, an ergonomic job analysis was performed by Mr. Thomas Rafferty. Triad Therapy Services, Inc employs Mr. Rafferty. Several jobs available with defendant were deemed to be within plaintiffs abilities by Dr. Kuzma. Plaintiff returned to work in November 1994. During the next twelve months, plaintiffs employment with defendant consisted of moving between four different tasks in the assembly of various valves.
6. Plaintiff returned to Dr. Kuzma in February 1995 with pain in her right elbow. Dr. Kuzman diagnosed right lateral epicondylitis and eventually operated on plaintiffs right elbow on November 11, 1995.
7. Defendant accepted liability for plaintiffs right elbow condition and paid plaintiff temporary total disability compensation for the period she was out of work as a result.
8. In December 1995 plaintiff presented to Dr. Kuzma with complaints of pain in her left elbow. Tests performed in January 1996 resulted in a diagnosis of left epicondylitis. Plaintiffs condition was initially treated conservatively with splints and medication. Dr. Kuzma performed surgery on plaintiffs left elbow on February 2, 1996.
9. Plaintiff attempted to return to work on April 14, 1996, but was unsuccessful due to continuing left arm pain. She went back out of work from May 2, 1996 through June 17, 1996. Thereafter, she returned to work until July 24, 1996. Plaintiff has not been employed since that time.
10. Following a functional capacity evaluation, Mr. Alan Gorrod, a certified work capacity and ergonomic evaluator, met with plaintiff and her supervisors at defendants plant and identified multiple suitable workstations. These workstations were reviewed by Dr. Kuzma and found to be suitable for plaintiff.
11. Dr. Kuzma reviewed the four jobs that plaintiff performed between her carpal tunnel surgery in November 1994 and her right elbow surgery in November 1995. He stated that three of the tasks would not have had a negative effect on plaintiffs left elbow condition. He further testified that the fourth task might have aggravated a pre-existing condition if one existed, but noted that because plaintiff alternated between all four jobs, she could return to the job consisting of these tasks.
12. There is insufficient evidence of record from which to determine by its greater weight that plaintiffs left elbow epicondylitis condition resulted from an injury by accident arising out of and in the course of plaintiffs employment with defendant or that it resulted from a disease or disability related to causes and conditions that are characteristic of and peculiar to plaintiffs employment with defendant.
 ***********
Based on the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Pursuant to the stipulation of the parties, plaintiff has an additional five percent permanent partial disability to her right hand, for which plaintiff is entitled to permanent partial disability compensation at the rate of $228.54 per week for a period of ten weeks. N.C. Gen. Stat. 97-31.
2. Plaintiff failed to prove by the greater weight of the evidence that her left elbow epicondylitis condition resulted from an injury by accident arising out of and in the course of plaintiffs employment with defendant or that it resulted from a disease or disability related to causes and conditions that are characteristic of and peculiar to plaintiffs employment with defendant. N.C. Gen. Stat. 97-2 (6); 97-53 (13).
3. Accordingly, plaintiff is not entitled to medical compensation for her left elbow epicondylitis condition under the Act. N.C. Gen. Stat. 97-52; Moore v. J.P. Stevens Co., 47 N.C. App. 744,269 S.E.2d 159, cert. denied, 301 N.C. 401, 274 S.E.2d 226 (1980).
4. Plaintiff has failed to demonstrate by the greater weight of the evidence that her time out of work subsequent to April 14, 1996 was causally related to a compensable condition. Therefore, she is not eligible under the Workers Compensation Act for compensation benefits for lost wages after April 14, 1996.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. For the additional five percent permanent partial disability of her right hand, defendant shall pay permanent partial disability compensation to plaintiff at the rate of $228.54 per week for a period of ten weeks. Said amount shall be paid to plaintiff in a lump sum, subject to the attorneys fee approved in Paragraph 4.
2. Plaintiffs claims for medical treatment and disability compensation benefits as a result of her left lateral epicondylitis elbow condition must be and are hereby DENIED.
3. Defendant shall pay for all medical expenses incurred or to be incurred by plaintiff as a result of the compensable injuries to her right and left hands and right elbow that are shown to be reasonably required to affect a cure, give relief, and/or lessen plaintiffs period of disability.
4. A reasonable attorney fee of twenty-five percent of the compensation due plaintiff under Paragraph 1 of this AWARD is approved for plaintiffs counsel and shall be paid as follows: twenty-five percent of the lump sum due plaintiff under Paragraph 1 of this AWARD shall be deducted from those sums.
5. Defendant shall pay the costs of this action.
This is the ___ day of August, 2000.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
S/______________ RENE C. RIGGSBEE COMMISSIONER