JUNIOR C. LUMPKINS, EMPLOYEE v. FIELDCREST MILLS, EMPLOYER, SELF-INSURED

No. 8110IC628

(Filed 6 April 1982)

**Master and Servant § 68— occupational disease—finding of insufficient causation—conclusive on appeal**

In a workers' compensation proceeding, evidence that plaintiff's employment was merely a "possible etiologic factor" in causing his lung disease, supported the Commission's finding that plaintiff's lung disease had an insufficient causal relationship with his employment to grant him compensation and the Commission's conclusion must be affirmed.

APPEAL by plaintiff from the North Carolina Industrial Commission. Opinion and Award entered 24 February 1981. Heard in the Court of Appeals 11 February 1982.

Plaintiff filed a claim for workers' compensation benefits alleging that he is "suffering from an occupational disease caused by exposure to cotton dust." Deputy Commissioner W. C. Delbridge found facts and concluded that "[t]here is insufficient evidence of a causual [sic] relationship between plaintiff's employment and his chronic obstructive lung disease to support an award in this case." The Full Commission affirmed and adopted the deputy commissioner's findings and conclusion, with Commissioner Coy M. Vance filing a dissenting opinion. Plaintiff appeals from the Full Commission's Opinion and Award.

*Michael E. Mauney for plaintiff-appellant.*

*Smith, Moore, Smith, Schell & Hunter, by J. Donald Cowan, Jr., for defendant-appellee.*

HILL, Judge.

The deputy commissioner made the following findings of fact:

1. Plaintiff was born on October 16, 1921 and finished the seventh grade in school. He went to work for Fieldcrest Mills in 1952. When plaintiff first went to work for Fieldcrest Mills he was employed in the weave department where he worked as a weaver and loom cleaner until 1963 and thereafter worked intermittently in both the weave room and inspection department until 1965. From 1965 until the plaintiff retired in 1978 he worked in the inspection area as a cloth checker.

2. During the first years of employment the mill processed cotton material but in the latter years (four or five) before retirement cotton blends and synthetics were processed. In 1975 polyester and rayon were processed. The cloth which would come to the plaintiff for inspection had been washed, dyed, and woven. There was a small amount of dust involved. . . .

3. In the weave room the cotton dust and lint were thick. As a weaver and loom cleaner plaintiff was constantly exposed to cotton dust. The dust would be particularly bad as the looms were being blown off.

4. Plaintiff began experiencing breathing problems consisting of cough and shortness of breath four or five years

before his retirement from his employment. He would notice that his breathing problems would improve when he was away from work either on weekends but would return when he returned to work and was again exposed to the dust and lint. Plaintiff was advised by medical doctors to get out of an environment where there was dust present. Plaintiff stopped working in March of 1978.

5. Since leaving the mill plaintiff has worked part-time as a security person.

6. Plaintiff smoked a pack of cigarettes a day for approximately 25 years until 1979. At that time plaintiff stopped smoking for a short while. He now smokes no more than a pack and a half a month.

7. Dr. Herbert O. Sieker, a member of the Commission's Occupational Disease Panel, examined the plaintiff on February 27, 1979 and reported in part as follows:

.   .   .   .

IMPRESSIONS: 1. Chronic obstructive lung disease.

2. History of hypertensive vascular disease.

The patient has history and findings indicating that he is disabled for work involving strenuous physical activity, but he is capable of engaging in work with moderate degree of activity. In view of the history that symptoms were worse in the last several years with cotton dust exposure, this must be considered as a possible etiologic factor. Patient, however, is clearly not completely disabled, but he should not work in cotton dust in the future."

8. Plaintiff has chronic obstructive lung disease and a history of hypertensive vascular disease.

9. It was Dr. Sieker's impression that the plaintiff was disabled at most for strenuous physical activity in that he could do the same type of work he had been doing for the last four or five years before his retirment but he should work in an environment free of dust, this to include cotton dust. . . .

10. Plaintiff should not work in the cotton dust, but there is insufficient history to implicate this as the causative factor in his chronic obstructive lung disease. . . .

11. There is insufficient evidence of a causual [sic] relationship between plaintiff's employment and his chronic obstructive lung disease to support an award in this case. . . .

As noted above, Deputy Commissioner Delbridge concluded that these facts do not show a sufficient causal relationship between plaintiff's employment and his lung disease to grant him compensation.

Our scope of review in this matter is as follows:

Except as to questions of jurisdiction, the rule is that the findings of fact made by the Commission are conclusive on appeal when supported by competent evidence. This is so even though there is evidence to support a contrary finding of fact. [Citations omitted.] The appellate court does not retry the facts. It merely determines from the proceedings before the Commission whether sufficient competent evidence exists to support its findings of fact.

*Morrison v. Burlington Industries*, 304 N.C. 1, 6, 282 S.E. 2d 458, 463 (1981).

The Workers' Compensation Act contemplates that two events must occur before a workers' compensation claim ripens: (1) injury from an occupational disease, which (2) causes disability. *Taylor v. J. P. Stevens & Co.*, 300 N.C. 94, 265 S.E. 2d 144 (1980); *McKee v. Crescent Spinning Co.*, 54 N.C. App. 558, 284 S.E. 2d 175 (1981).

Plaintiff's third and fourth arguments attack the deputy commissioner's conclusion, in essence, that he is not suffering from an occupational disease. There are three elements necessary to prove the existence of a compensable occupational disease under G.S. 97-53(13): (1) the disease must be due to conditions which are characteristic of a particular employment, (2) the disease is not an "ordinary disease[s] of life to which the general public is equally exposed outside of the employment," *Id.*, and (3) "proof of a causal connection between the disease and the employment." *Hansel v.*

*Sherman Textiles,* 304 N.C. 44, 52, 283 S.E. 2d 101, 106 (1981). *See Booker v. Duke Medical Center,* 297 N.C. 458, 256 S.E. 2d 189 (1979). In *Morrison v. Burlington Industries, supra,* at 12-13, 282 S.E. 2d at 467, our Supreme Court interpreted the latter element to be

> the extent of the disablement *resulting from* said occupational disease, *i.e.,* whether she is totally or partially disabled *as a result of the disease.* If the disablement resulting from the occupational disease is total, the claimant is entitled to compensation as provided in G.S. 97-29 for total disability. If the disablement resulting from the occupational disease is partial, the claimant is entitled to compensation as provided in G.S. 97-30 for partial disability. . . . That means, in occupational disease cases, that disablement of an employee resulting from an occupational disease which arises out of and in the course of the employment, G.S. 97-52 and G.S. 97-2(6), is compensable and claimant has the burden of proof "to show not only . . . disability, but also its degree." *Hall v. Chevrolet Co.,* 263 N.C. 569, 575, 139 S.E. 2d 857, 861 (1965).

(Emphasis original.) The court further discussed the rule of causation in *Hansel v. Sherman Textiles, supra,* at 52-53, 283 S.E. 2d at 106:

> In workers' compensation actions the rule of causation is that where the right to recover is based on injury by accident, the employment need not be the sole causative force to render an injury compensable.
>
> [If the employee] by reason of constitutional infirmaties [sic] is predisposed to sustain injuries while engaged in labor, nevertheless the leniency and humanity of the law permit him to recover compensation if the physical aspects of the employment contribute in some reasonable degree to bring about or intensify the condition which renders him susceptible to such accident and consequent injury.

> *Vause v. Equipment Co.,* 233 N.C. 88, 92, 63 S.E. 2d 173, 176 (1951).

> It has on occasion been implied that a similar rule of causation should prevail in cases where compensation for oc-

cupational disease is sought; however, if a disease is produced by some extrinsic or independent agency, it may not be imputed to the occupation or the employment. *Duncan v. Charlotte*, 234 N.C. 86, 66 S.E. 2d 22 (1951); *Moore v. Stevens & Co.*, 47 N.C. App. 744, 748, 269 S.E. 2d 159, 162 (1980).

However, *"[a] mere possibility of causation is neither 'substantial' nor sufficient.* It must be shown that the disease in question is an occupational disease; *i.e.*, a disease which is due to causes and conditions which are characteristic of and peculiar to claimant's trade, occupation or employment as distinguished from an ordinary disease of life to which the general public is equally exposed outside of the employment." *Walston v. Burlington Industries*, 304 N.C. 670, 679, 285 S.E. 2d 822, 828 (1982) (emphasis added). *See* G.S. 97-53(13). Thus, the following rules now apply:

> (1) an employer takes the employee as he finds [him] with all [his] pre-existing infirmities and weaknesses. (2) When a preexisting, *nondisabling, non-job-related* condition is aggravated or accelerated by an accidental injury arising out of and in the course of employment or by an occupational disease so that disability results, then the employer must compensate the employee for the entire resulting disability even though it would not have disabled a normal person to that extent. (3) On the other hand, when a pre-existing, nondisabling, non-job-related disease or infirmity eventually causes an incapacity for work without any aggravation or acceleration of it by a compensable accident or by an occupational disease, the resulting incapacity so caused is not compensable. (4) When a claimant becomes incapacitated for work and part of that incapacity is caused, accelerated or aggravated by an occupational disease and the remainder of that incapacity for work is not caused, accelerated or aggravated by an occupational disease, the Workers' Compensation Act of North Carolina requires compensation only for that portion of the disability caused, accelerated or aggravated by the occupational disease.

*Morrison v. Burlington Industries, supra*, at 18, 282 S.E. 2d at 470 (emphasis original). Since the determination of whether there is a causal connection between the disease and the employment is a mixed question of law and fact, we may review the record *sub*

*judice* to determine if the findings and conclusion are supported by sufficient evidence. *Barham v. Food World, Inc.*, 300 N.C. 329, 266 S.E. 2d 676 (1980); *Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 233 S.E. 2d 529 (1977).

Finding of Fact Nos. 10 and 11 are critical to the issue of causation. In Finding of Fact No. 10, the deputy commissioner found that "there is insufficient history to implicate this [cotton dust exposure] as the causative factor in his chronic obstructive lung disease." Although we read *Morrison* and *Hansel* merely to require evidence that plaintiff's employment is *a causative factor* in his lung disease, we find evidence to support the deputy commissioner's finding that plaintiff's lung disease has an insufficient causal relationship with his employment to grant him compensation.

Dr. Herber O. Sieker testified as follows:

The cotton dust would implicate that—would be implicated as an aggravating factor and would make me recommend that he is [sic] not work in the cotton dust, but it was my impression that he was disabled at most only for strenuous physical activity.

.   .   .   .

Well, historically he said he had symptoms when he was exposed to the cotton dust in the last four to five years before he stopped working. I don't think from the standpoint of evaluating history one can argue with that and certainly in the future the man should not work in the cotton dust but I don't think that this is the sufficient history to implicate this is [sic] the causative factor in his obstructive lung disease.

.   .   .   .

. . . As I stated in my impression, the cotton dust has to be considered an etiologic fact in causing his symptoms and certainly seeing him as a physician I would recommend that he not work in the cotton dust in the future.

.   .   .   .

From the history I can implicate [plaintiff's employment] as a possible etiologic factor but I cannot strongly say it was the causative or only causative factor.

Dr. Sieker's medical report indicated the presence of chronic obstructive lung disease and a history of hypertensive vascular disease. Further, "[i]n view of the history that symptoms were worse in the last several years with cotton dust exposure, this must be considered as a possible etiologic factor. Patient, however, is clearly not completely disabled, but he should not work in cotton dust in the future."

"In making its findings, the Commission's function is 'to *weigh and evaluate* the *entire* evidence and determine as best it can where the truth lies.' " *Harrell v. J. P. Stevens & Co.*, 45 N.C. App. 197, 205, 262 S.E. 2d 830, 835, *disc. rev. denied*, 300 N.C. 196, 269 S.E. 2d 623 (1980) (emphasis original). The Industrial Commission is the sole judge of the witnesses' credibility and may choose to believe all, a part, or none of any witnesses' testimony. *Id.*; *Morgan v. Thomasville Furniture Industries, Inc.*, 2 N.C. App. 126, 162 S.E. 2d 619 (1968).

Since there is evidence that plaintiff's employment was merely a "possible etiologic factor" in causing his lung disease, we find that the Commission appropriately exercised its function as described above. Our scope of review in this matter therefore mandates that the finding of insufficient causation is conclusive on appeal, and that the opinion and award be affirmed. Unless there is a proper finding that plaintiff suffers from an occupational disease, the analysis required by *Morrison* and *Hansel* is inappropriate. *See Walston v. Burlington Industries, supra; see also Rutledge v. Tultex Corp.*, 56 N.C. App. 345, 289 S.E. 2d 72 (1982).

In light of our disposition of the above arguments, we do not find it necessary to address plaintiff's remaining assignments of error.

Affirmed.

Judge BECTON concurs.

Judge HEDRICK concurs in the result.