Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except to modify Findings of Fact 13 and 14, and Conclusion of Law 1, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the deputy commissioner as
STIPULATIONS
1. At the time of the injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant at the time of the alleged injury.
3. Defendant was a duly qualified self-insured employer as provided in the North Carolina Workers' Compensation Act.
4. Plaintiff's alleged injury occurred on 1 February 1992 or 2 June 1992.
5. Plaintiff average weekly wage at the time of her alleged injury was $191.91.
6. Plaintiff's alleged periods of temporary total disability were from 2 June 1992 through 16 June 1992, 18 June 1992 through 30 September 1992, and 12 October 1992 through the present.
7. Plaintiff's medical records from Duke University Medical Center consisting of 45 pages, including a letter from Dr. Bunyard dated 2 June 1992, Dr. Gary Kuzma consisting of 3 pages, and Dr. J. Nicholas Fax consisting of 4 pages, collectively marked as Stipulated Exhibit Number Two, are stipulated into evidence.
8. A video cassette tape purporting to show plaintiff's job duties with defendant, marked as Stipulated Exhibit Number Three, is stipulated into evidence.
EVIDENTIARY RULINGS
The objections appearing in the deposition of Dr. Levesque are OVERRULED.
* * * * * * * *
Based upon all of the competent evidence adduced at the hearing before the deputy commissioner, the Full Commission makes the following additional
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a 36-year-old woman who had completed the twelfth grade of high school.
2. Plaintiff's prior work experience included that of cashier, quiller, assistant manager and sewer. At the time of the hearing, plaintiff had performed part-time work as a day-care provider through the North Carolina Department of Social Services.
3. In March of 1991, plaintiff became employed with defendant as a dietary assistant. Plaintiff's work hours were from 6:00 a.m. through 5:30 p.m. for approximately 40 hours per week. Plaintiff received breaks of 15 minutes in the morning, 30 minutes at lunch and 15 minutes in the afternoon.
4. Plaintiff's general duties were that of preparing salad trays (two meals/day) for patients; preparing dessert trays (2 meals/day) for patients, and preparing sandwiches in the lunch serving line for employees.
5. In order to prepare the salad trays for patients, plaintiff was required to prepare six trays, each tray holding 21 paper salad containers. Plaintiff placed the paper salad containers on the trays with a horizontal flipping motion of her wrist. Plaintiff would then repeat the process placing in each salad container lettuce leaves, followed by two slices of tomato and a slice of cucumber.
6. In order to prepare the patient dinner salad trays, plaintiff would again repeat the previously described process for congealed salad.
7. Plaintiff would alternate days preparing salad trays for lunch and the supper tray with the congealed salads, alternating day to day. Plaintiff would prepare these items between 7:00 a.m. and 9:00 a.m.
8. Plaintiff would next prepare the patient lunch, dessert and dinner trays. Again, plaintiff was required to perform the same process as previously described for the patient lunch salad trays. Plaintiff would prepare the patient dessert, lunch and supper trays from 9:00 a.m. to approximately 11:30 a.m.
9. From 11:30 a.m. to approximately 1:30 p.m., plaintiff worked the employee lunch line serving sandwiches. Sandwiches were prepared according to employee preference. Plaintiff prepared approximately 45 sandwiches per day.
10. Between 2:00 p.m. and 4:15 p.m., plaintiff would perform her back up duties which consisted of preparing lettuce, slicing tomatoes and cucumbers, and generally making preparations for the next day's patient salads.
11. After working as a dietary assistant for defendant for approximately 13 to 14 months, plaintiff began to experience a stinging sensation in her right hand while performing her duties. Eventually, plaintiff began to experience throbbing and numbness in her right hand and wrist and numbness in her left hand.
12. On 2 June 1992, plaintiff had bilateral carpal tunnel syndrome. The pain and numbness in plaintiff's wrists and hands was caused by her carpal tunnel syndrome.
13. Dr. Bunyard saw the plaintiff on May 29, 1992 at Duke University Medical Center and prescribed a splint for her right hand. He noted that on the previous six months, plaintiff had a 30-pound weight gain, an increase in facial hair, edema (swelling), and a number of other symptoms that can be associated with hormonal difficulty, and specifically suggestive, according to Dr. Levesque, of Cushings syndrome. Edema, obesity, and hormonal imbalances are themselves possible causes of carpal tunnel syndrome. Plaintiff had similar symptoms in her left hand that resolved prior to being diagnosed as carpal tunnel, and complained of numbness in her little finger, suggesting a more general condition that involved her ulnar nerve, in addition to the medial nerve affected by carpal tunnel syndrome. Dr. Kuzma could not express an opinion as to whether plaintiff's employment with defendant in fact caused her carpal tunnel syndrome. In a letter dated 10 January 1995, Dr. Kuzma stated, "There is no way to tell you exactly who or what caused [plaintiff's] carpal tunnel syndrome[.]" Dr. Levesque, when asked whether plaintiff's employment with defendant caused her carpal tunnel syndrome, testified, "Whether or not her specific job actually caused it, I don't know.
14. Plaintiff's workplace activities did not significantly contribute to the development of her carpal tunnel syndrome. Aggravation due to workplace activities of Plaintiff's carpal tunnel syndrome, if any, did not cause or increase her incapacity to earn wages. That condition, and and her disability was not caused by her employment with defendant as a dietary assistant.
* * * * * * * *
The foregoing findings of fact and conclusions of law engender the following additional
CONCLUSIONS OF LAW
1. Plaintiff's carpal tunnel syndrome and disability did not result from her employment with defendant. Plaintiff did not sustain an injury by accident arising out of and in the course of her employment, and she did not contract an occupational disease. N.C. Gen. Stat. § 97-2(6); N.C. Gen. Stat. § 97-53(13);Hansel v. Sherman Textiles, 304 N.C. 44, 283 S.E.2d 101, (1981);Limpkins v. Fieldcrest Mills, 56 N.C. App. 653, 289 S.E.2d 848
(1982):Wilkins v. J.P. Stevens Co., 333 N.C. 449, 453-54,426 S.E.2d 675 (1993).
2. Plaintiff is entitled to no compensation under the North Carolina Workers' Compensation Act.
* * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
ORDER
1. Under the law, plaintiff's claim must be, and the same is hereby, DENIED.
2. Each side shall bear its own costs, except defendant shall pay Dr. Levesque $160.00 as an expert witness fee.
 S/ _________________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ _________________________ BERNADINE S. BALLANCE COMMISSIONER
S/ _________________________ DIANNE C. SELLERS COMMISSIONER